IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LAURA JEAN BARNES,

     Plaintiff,

v.                                  CASE NO. 1:20-cv-277-AW-GRJ

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

     Plaintiff Laura Jean Barnes ("Barnes") appeals from the final decision of the Commissioner of Social Security ("the Commissioner") denying her protectively filed application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") and her application for Social Security Income ("SSI") under Title XVI of the Act. ECF No. 1.  In her appeal, Barnes challenges the agency's determination at step four that she has the residual functioning capacity ("RFC") to perform "light work" full-time.  Specifically, Barnes says that the administrative law judge ("ALJ") erred by failing to consider her impairments in combination when assessing her RFC.  Barnes further complains that the ALJ's determination that she can engage in full-time

light work is not supported by substantial evidence.  The Commissioner

counters that the ALJ's RFC assessment complied with the proper legal

standards and is supported by substantial evidence.  For the reasons

explained below the Court concludes that the decision is due to be

affirmed.

## I. PROCEDURAL HISTORY

Barnes filed applications for SSI on January 22, 2019, R. 211-19, and

DIB on February 28, 2019, R. 218-19.  She alleged a disability onset date

of October 1, 2018 (when she was 49 years old) due to herniated discs in

her neck and lower spine, peripheral neuropathy, vascular deficiency in her

legs, diabetes, atrial fibrillation, anxiety, COPD, carpel tunnel syndrome,

and chronic arthritis.  R. 218, 235.  Barnes' claims were denied initially and

upon reconsideration.  ALJ James Dixon held a hearing *via* video

conference, and thereafter made the following written findings:

- Barnes meets the insured status requirements of the Act through
  June 30, 2020.

- Barnes has not engaged in substantial gainful activity since October
  1, 2018, the alleged onset date.

- Barnes has severe impairments of back disorders (discogenic and
  degenerative), carpal tunnel syndrome, and osteoarthrosis and allied
  disorders.

- Barnes does not have an impairment or a combination of impairments that meets or medically equals the severity of 1.04 of the listed impairments in 20 C.F.R. Part 4, Subpart P, Appendix 1.

R. 17-19.

After careful consideration of the entire record, the ALJ found that

Barnes has the RFC to perform light work as defined by 20 C.F.R. §

404.1567(b) and 416.967(b) as follows:

> …lifting/carrying (including upward pulling) 20 pounds occasionally, 10 pounds frequently; standing/walking/sitting (with normal breaks) about 6 hours each, out of an 8-hour workday…. unlimited pushing/pulling (including hand/foot controls) within exertional limitations….  frequent climbing of ramps and stairs, frequent balancing, kneeling and crouching; occasional climbing of ladders, ropes or scaffolds, and occasional stooping and crawling.  There are no manipulative, visual or communicative limitations.  [Barnes] must avoid concentrated exposure to extreme cold and pulmonary irritants such as fumes, odors, dust, gases, poor ventilation, etc.

R. 19.

The ALJ further found Barnes capable of performing past relevant

work as a print developer, baker/cook, and print developer/cashier.  R. 22.

Comparing Barnes' RFC with the physical and mental demands of her prior

work, the ALJ found that Barnes is able to perform these jobs as actually

and generally performed.  *Id*.

Alternatively, at step five of the sequential analysis relying upon the

testimony of a vocational expert the ALJ found that other jobs exist in

significant numbers in the national economy that Barnes can perform such as retail marker and vending machine attendant.  R. 23.  Consequently, the ALJ determined that Barnes has not been under a disability, as defined in the Act, since October 1, 2018.  R. 23.

The Appeals Council denied review.  R. 1-3.  This appeal followed.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence is more than a scintilla, *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (citation omitted); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (citation

4

omitted). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citations omitted); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) ("[T]he entire record must be scrutinized to determine the reasonableness of the Secretary's factual findings.") (citation omitted); *Parker v. Bowen,* 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied). However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1) (2020); 20 C.F.R. §§ 404.1505, 416.905 (2012). The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national

economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.  To be non-severe, the impairment must be "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Parker v. Brown,* 793 F.2d 1177, 1181 (11th Cir. 1986) (citations omitted).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her

past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) (*citing* 20 C.F.R. § 404.1520(a)(4)(iv)).  As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments.  20 C.F.R. § 404.1545(a).  Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step. 20 C.F.R. § 404.1520(e).  At the fifth step, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.  *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987) (per curiam).  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can

perform currently exists in the national economy.  *Doughty v. Apfel*, 245

F.3d 1274, 1278 n.2.[1]

## III.  DISCUSSION

Barnes' step four challenge to her RFC is two-fold.  First, Barnes

argues that the ALJ erred by failing to consider her impairments in

combination.  Second, Barnes contends that the ALJ erred by finding that

she can engage in full-time light work, because that finding, according to

Barnes, is not supported by substantial evidence.

The responsibility for making the RFC determination rests with the

ALJ.  20 C.F.R. § 404.1546(c) ("If your case is at the administrative law

judge hearing level ..., the administrative law judge ... is responsible for

assessing your residual functional capacity.").  "An RFC determination is an

assessment, based on all relevant evidence, of a claimant's remaining

---

[1] In *Doughty*, the Eleventh Circuit Court of Appeals explained the burden shifting process as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner….  The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform….  In order to be considered disabled, the claimant must then prove that she is unable to perform the jobs that the Commissioner lists….  The temporary shifting of the burden to the Commissioner was initiated by the courts and is not specifically provided for in the statutes or the regulations….

> *Doughty*, 245 F.3d at 1278 n.2 (internal citations omitted).

ability to do work despite her impairments…. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, *i.e.*, where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x. 890, 891-92 (11th Cir. 2013) (per curiam) (internal citation omitted).

A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure"—"is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x. 868, 870 n.5 (11th Cir. 2012) (*citing* 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also Davison v. Astrue*, 370 F. App'x. 995, 996 (11th Cir. 2010) ("An ALJ makes an RFC determination by considering the claimant's ability to sit, stand, walk, lift, carry, push, pull, stoop, crouch, and reach.") (*citing* 20 C.F.R. § 404.1545(b)).  If a claimant has severe impairments, but her symptoms do not meet or equal those of a listed impairment, the ALJ must

consider the limiting effects of all impairments, even those that are not severe, in determining the RFC in light of all of the medical and nonmedical evidence. 20 C.F.R. § 404.1545(e).

**A.    Combination of Impairments.**

The Court first addresses Barnes' argument that the ALJ failed to consider her impairments in combination when assessing her RFC.

It is well settled that an ALJ must consider the combination of all impairments when determining disability.  *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (per curiam) (finding that "it is the duty of the ALJ to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments alleged by the claimant cause the claimant to be disabled.") (citation omitted).  Further, "the ALJ must consider every impairment alleged."  *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1989).  "[A]n ALJ's finding regarding a claimant's 'impairment or combination of impairments' establishe[s] that the ALJ ha[s] indeed considered the impact of the claimant's combined impairments."  *Reliford v. Barnhart*, 157 F. App'x 194, 196 (11th Cir. 2005) (per curiam) (citation omitted).  Notably, an ALJ's statement that the claimant did not have "an impairment *or combination of impairments* listed in, or medically equivalent to one listed in

Appendix I, Part P" constitutes evidence that the ALJ considered the combined effects of the claimant's impairments. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (per curiam) (emphasis in original). An ALJ's decision that lacks discussion of significant evidence, however, evidences a failure to consider all impairments in combination. *Brunson v. Astrue*, 850 F. Supp. 2d 1293, 1306-07 (M.D. Fla. 2011).

In the present case, the ALJ expressly acknowledged that in determining Barnes' RFC, he "must consider all of [Barnes'] impairments, including impairments that are not severe." R. 17 (citations omitted). At step two, the ALJ determined that Barnes has the following severe impairments: disorders of the back, discogenic and degenerative; carpal tunnel syndrome; osteoarthritis and allied disorders. R. 18. The ALJ also addressed Barnes' impairments that he determined were not severe and the reasons that he found they were not— COPD (no frequent ER visits, hospital admissions or doctor's visits for respiratory problems); diabetes, heart problems, herniated discs in neck and lower spine, lower back pain, peripheral neuropathy, vascular deficiency in legs, anxiety, migraines, and being overweight but not obese (all conditions were not work-preclusive). R. 18-19.

Then at step three, the ALJ found that: "The claimant does not have

an impairment or combination of impairments that meets or medically

equals the severity of 1.04 of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1." R. 19 (citations omitted). It is well settled in the

Eleventh Circuit that the ALJ's finding that a claimant does not have an

impairment or combination of impairments that equaled a listing is sufficient

to demonstrate that the ALJ considered the cumulative effect of the

claimant's impairments as required. *Wilson v. Barnhart*, 284 F.3d 1219,

1225 (11th Cir. 2022). As further evidence that the ALJ considered all the

Plaintiff's impairment in assessing the RFC, the ALJ wrote:

> The undersigned considered all of the claimant's medically
> determinable impairments, including those that are not severe,
> when assessing the claimant's residual functioning capacity.
> The undersigned finds that these nonsevere impairments do
> not significantly limit the claimant's physical or mental ability to
> do basic work activities as they cause only a slight abnormality
> or combination of slight abnormalities that would have no effect
> on functional mental or physical abilities.

R. 18. And, in making Barnes' RFC finding, the ALJ specifically

states that he "considered all symptoms and the extent to which these

symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence…." R. 19 (citations omitted).

In his written decision the ALJ discussed at length the "significant

evidence" found in the record. He discussed the objective medical

evidence (MRIs, x-rays, electrodiagnostic exams, ultrasounds, etc.). R. 19-21.  He discussed the medical treatment related to Barnes' alleged impairments (severe and non-severe).   R. 18-21.  He further evaluated prior administrative medical findings, finding them "somewhat persuasive". R. 21-22.  And, lastly, he reviewed Barnes' own testimony and that of the vocational expert. R. 20-21.

Based upon the ALJ's thorough review of the medical evidence and his affirmative statements that he considered Barnes' medical condition "as a whole" and considered Barnes' medically determinable impairments (including those which were not severe), the Court concludes that the record adequately reflects that the ALJ properly considered Barnes' impairments in combination when making his disability determination.

### B.    Full-Time "Light Work" Determination.

Barnes also argues that the ALJ's determination that she can engage in full-time light work is not supported by substantial evidence.

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, Case No. 3:10-cv-975-TEM, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d

1345, 1347 (M.D. Fla. 2005)); *see also Packer v. Astrue*, Civil Action No.

11-0084-CG-N, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("The ALJ

must link the RFC assessment to specific evidence in the record bearing

upon the claimant's ability to perform the physical, mental, sensory, and

other requirements of work."), *aff'd*, 542 F. App'x 890 (11th Cir. 2013) (per

curiam).

In this case, the ALJ determined that Barnes could perform a range of

light work with postural and environmental limitations.  R. 19.  Barnes

disagrees with that finding, arguing that the "undisputed medical evidence"

establishes that she suffers from the following impairments that negatively

impact her ability to stand and walk:  "sacroiliitis; low back pain;

trochanteric bursitis of her right hip; diabetic polyneuropathy; intervertebral

disc degeneration of her lumbar spinal region; chronic pain; and lumbago

with sciatica on her right side."  ECF No. 19 at 21.  Barnes contends that,

under the regulations, light work jobs either "require[] a good deal of

walking or standing" or "sitting most of the time but with some pushing and

pulling of arm-hand or leg-foot controls, which require greater exertion than

sedentary work," which she cannot do.  *See* Soc. Sec. Ruling 83-10.

"Relatively few unskilled light jobs are performed in a seated position."  *Id*.

Barnes further says that even if she could perform full-time work at the

*sedentary* level, a "decision of disabled is mandated" because she has no
past relevant work at the sedentary level. ECF No. 19 at 18.

In support of her position that the ALJ's "light work" determination
should be affirmed, the Commissioner points to the medical records that
"document that [Barnes] generally had a normal respiratory and cardiac
examination, normal range of motion in her joints, some edema in her legs,
normal muscle tone, and 5/5 muscle strength throughout."  ECF No. 20 at
9.  The Commissioner says that the medical records related to Barnes'
treatment for back pain which reflect that, although she had limited range of
motion in her back, document that Barnes had full range of motion in her
hip, knee and ankle, and her back pain was successfully managed with
opiates.  *Id*. at 10.

Finally, while an MRI of Barnes' neck showed a disc protrusion at C5-
C6 with mild ventral protrusion, the MRI did not show any cord
compression or stenosis. Similarly, while the MRI showed a small disc
protrusion at C2-C3, there was minimal thecal sac impression and no
evidence of stenosis.  *Id*.

Based upon these records, the Commissioner says that the objective
medical records support the ALJs determination that Barnes was not able
to "perform very heavy, heavy, or medium exertional jobs but could perform

a range of light work with postural and environmental limitations."  ECF No. 20 at 10.

In addition to the medical records supporting the ALJ's light work finding, the Commissioner argues that the ALJ's "light work" determination is supported by prior administrative medical findings.  In February of 2019, Phillip Mater, M.D., found that Barnes' physical impairments limited her to a reduced range of light work with postural and environmental limitations.  R. 62-63.  Steven Arkin, M.D., reviewed the record in May of 2019 and similarly concluded that Barnes' physical limitations limited her to a reduced range of light work with postural and environmental limitations. R. 89-90.

Finally, the Commissioner says that if Barnes' impairments were severe enough to warrant functional limitations beyond those determined by the ALJ, it was Barnes' burden to prove this fact under steps two through four, which she failed to do.  ECF No. 20 at 14.

Because the parties' dispute concerning the ALJ's RFC finding focuses upon whether substantial evidence supports the ALJ's determination that Barnes is able to perform full-time "light work"— which

requires her to stand/walk/sit for 6 hours out of an 8-hour workday— the Court will assess the medical record relevant to this question.[2]

On January 3, 2018, Barnes sought treatment from Florida Pain and Rehabilitation Center ("FP&RC) for severe back, leg and hip pain after she tripped and fell over a stool while running.  R. 782.  Her pain intensity level at that time was more than 10/10.  *Id*.  Barnes experienced pain while flexing her lumbar spine and had tenderness in her right hip, but she was negative for sacroiliac joint ("SI") pain and the range of motion in her hip, knee and ankle was normal.  R. 785.  FP&RC diagnosed Barnes with lumbago with sciatica on her right side, sacroiliitis, bursitis of her right hip, and Type 2 diabetes mellitus without complications.  R. 786.  FP&RC prescribed an exercise program to treat Barnes' neck and lower back pain. R. 786.  An MRI of Barnes's lumbar spine (dated January 3, 2018) detected mild facet arthropathy at L4-5 and L5-S1, mild sclerosis on the iliac side of the left SI joint, and mild lumbar levoscoliosis.  R. 808.

---

[2] The record contains medical information that has nothing to do with Barnes' ability to stand/walk/sit such as treatment records for skin conditions/dermatology, R. 386-88, 404, 414-15, 424-26, 434-35, 437-39; successful carpal tunnel syndrome surgery, R. 326-30; afib/diabetes, R. 341-45, 350, 381-83, 399, 411, 413, 416-17, 419, 427; hysterectomy /pelvic prolapse, sling, retocele repair (without complications), R. 348, 353-69, 370-78, 391-95, 395-99, 407-08, 436-37 441-43, 443-56, 458-66, 477-80; normal cardiogram, R. 379, 383; viral warts, R. 402-03, 405-06, 413, 420-21, 457-58, 466-67, 481-84, 491-93, 494-97; anxiety attack, R. 422; pneumonia, R. 429; and sinusitis, R. 431-33, 468-74, 484-87.

Barnes thereafter participated in a two-year treatment program at FP&RC to address the pain in her lower back, neck, and right hip.  On January 17, 2018, Barnes had her first pain management session.  R. 775-779.  Barnes' pain was initially treated with vitamin B supplements, an exercise program, and rest. R. 778-79.

Then, on February 15, 2018, FP&RC prescribed Barnes a controlled substance to treat her "chronic intractable pain which ha[d] not [been] adequately controlled with other treatment attempts", R. 749, but the controlled substance was not utilized until March 30, 2018.  R. 729.  On June 15, 2018, an x-ray of Barnes' cervical spine showed "possible mild instability at the C5-C6 level" as well as "multilevel degenerative changes." R. 795.

Significantly, after five months of medication, Barnes' pain symptoms improved.  On August 10, 2018, the FP&RC provider noted that the "use of opiates is controlling" Barnes' pain "in order to allow *daily activities and work* without significant side effects."  R. 687 (emphasis added). [3] From that

---

[3] On August 10, 2018, Barnes complained of pain in her neck, right arm and lower back.  R. 683. Her pain intensity registered 5/10.  *Id*.  Her cervical and lumbar spine range of motion was limited; she was positive for SI pain; she had tenderness in right pelvic hip; but her hip, knee and ankle had full range of motion.  R. 685.  Her pain was being managed with controlled substances. R. 687. "*The use of opiates is controlling pain in order to allow daily activities and work without significant side effects." Id*. (emphasis added).

date forward (until Barnes' last recorded visit to FP&RC on December 16, 2019), FP&RC continued to prescribe Barnes medication to control her pain so that she could engage in the business of daily living.

Notably, the FP&RC treatment records from the dates immediately prior to and after Barnes' alleged disability onset date of October 1, 2018, establish that her use of opiates was effective in controlling her pain.[4]  All of the FP&RC treatment records dated after October 1, 2018, show that Barnes' pain was being managed.[5]

On December 23, 2018, a cervical MRI showed a small to moderate broad-based central disc protrusion with minimal ventral thecal sac impression (no cord compression or stenosis) at C5-C6 and C2-C3.  R.

---

[4] On September 28, 2018: "The use of opiates is controlling pain in order to allow daily activities and work without significant side effects."  R. 670.  Again, on October 12, 2018: "The use of opiates is controlling pain in order to allow daily activities and work without significant side effects."  R. 664.

[5] *See, e.g.,* R. 642, 644, 646, 648, 650, 652, 654, 656, 657-58, 664, 733, 735, 738, 935, 937, 938-39, 940, 944, 946, 948, 950, 952, 953-54, 1209, 1211, 1212, 1213,1215, 1217, 1218, 1219, 1224, 1226, 1227, 1228,1230, 1232, 1233, 1234, 1236, 1238, 1239, 1242, 1244, 1245, 1250, 1252, 1253-54, 1256, 1258, 1259-60, 1262-66,

789.  On her visits to FP&RC in the Fall of 2019 until her last recorded visit

on December 16, 2019, the provider discussed and reviewed "non-opioid

and non-narcotic alternatives," such as physical therapy, with Barnes to

manage her pain, even though she was still being treated with opiates.

*See* R. 1239, 1233, 1227, 1218, 1212.

The record reflects that FP&RC provided the only ongoing treatment

for conditions and symptoms Barnes says the ALJ discounted when he

determined her RFC.  The FP&RC treatment records span two years, and

the FP&RC providers consistently—month after month—noted that the use

of opiates was working to control Barnes' pain so that she could function.

There is no evidence in these records that Barnes was unable to work

because of back, SI, or hip pain.  Rather, the records document that the

use of medication alleviated Barnes' pain so that she was able to

participate in daily living, including employment.

At the February 6, 2020, administrative hearing, Barnes testified that,

according to her doctor, her SI joint was "trashed".  R. 37. She further

testified that she experienced lower back pain that radiated through her

right hip, down across her thigh, into the inside portion of her right knee—

regardless of whether she was sitting, standing, or walking.  *Id*.  When

nothing else worked, Barnes said she lay down on her left side to relieve

the pressure on the right side of her body for as much as five hours per day.  R. 37, 41.  Barnes further testified that the pain in her lower back impacted her ability to stand so she was not able to get around much, and that the herniated discs in her neck prevented her from turning her head properly.  R. 41, 44.  The ALJ asked Barnes what happened in a typical 30-day month period if she experienced all her symptoms at once, to which she replied that she lies down on the couch propped up on a pillow (up to 18 days per month).  R. 48.

The ALJ considered this testimony and concluded that Barnes' "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence…."  R. 21.  The Court agrees.  The medical evidence shows that while Barnes was experiencing chronic pain, she was not experiencing pain at debilitating levels.

Also, prior administrative filings related to Barnes' ability to stand/walk/sit support the ALJ's findings.  On February 22, 2019, Barnes reported that she was able to drive a car, lift 25 pounds, prepare meals using a stove and microwave, and stand for 45 minutes with no pain. R. 59.  Additionally, Barnes reported "no gait issues."  *Id.*  The agency's reviewing doctor also concluded that Barnes can stand/walk/sit for 6 hours out of an

8-hour workday. R. 62. On May 16, 2019, a second agency doctor reviewed Barnes' medical records and came to the same conclusion—that Barnes can stand/walk/sit for 6 hours per day. R. 89.

In view of the above, the Court concludes that substantial evidence supports the ALJ's determination that Barnes can engage in full-time light work. Despite Barnes' claim to the contrary, the objective medical evidence along with prior administrative filings support the ALJ's finding that she can stand/walk/sit for 6 hours out of an 8-hour workday with normal breaks and with postural limitations.

Lastly, and while not dispositive of the result in this case, the record also reflects that Barnes was working as a cook at a nursing home in August of 2018 when she first started taking medication to alleviate her back pain. *See* R. 36. Barnes worked for nearly three months thereafter before taking time off from work for surgery in November. R. 348, 36. After she recovered from surgery, Barnes testified that she was not re-hired because she "wasn't up to par with [her] work ethics basically." R. 37. Not being able to keep a job is different from not being able to perform one.

Accordingly, the Court concludes that the ALJ's determination that Barnes can perform light work is supported by substantial evidence.

## IV.  CONCLUSION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED** and final judgment entered in favor of the Commissioner.

**IN CHAMBERS** in Gainesville, Florida this 8th day of April 2022.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge



**<u>NOTICE TO THE PARTIES</u>**


**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**